Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio





## MEMORANDUM OPINION

No. 04-10-00845-CV

Phillip and Benita **YOUNG**,
Appellants

v.

Emilio and Mary **SANCHEZ**,
Appellees

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2003-CI-16473
Honorable Michael Peden, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed:   October 12, 2011

AFFIRMED

Phillip and Benita Young appeal the trial court's summary judgment rendered in favor of Emilio and Mary Sanchez, claiming in part that the court had no jurisdiction to grant summary judgment. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This case began in 2003 as a dispute between neighbors Phillip and Benita Young and Emilio and Mary Sanchez over a concrete patio extension built by the Sanchezes in a five-foot

easement between the parties' zero lot line residences in Woodlake Country Club Estates. The Youngs claimed the patio extension interfered with their use of the easement and damaged their property. The Youngs filed a declaratory judgment suit seeking confirmation of the easement and requesting that the court order the Sanchezes to remove all fences, concrete slabs, and other materials located within the easement. The Sanchezes answered by asserting a general denial and several affirmative defenses; they claimed the Youngs were informed of the proposed patio extension and had raised no objection. The Sanchezes also counterclaimed for nuisance and invasion of privacy based on the Youngs' construction of a balcony that overlooks the Sanchezes' fenced patio and yard.

In August 2005, the parties mediated the dispute with the Honorable Henry Schuble and reached a settlement which was memorialized in a "Mediated Settlement Agreement" dated August 10, 2005 and signed by all parties (the "Settlement Agreement"). Paragraph 2 of the Settlement Agreement provides, "If any dispute arises with regard to the interpretation or performance of this agreement or any of its provisions . . . the parties agree to try to resolve the dispute by phone conference with the mediator who facilitated this settlement." As part of the Settlement Agreement, the judge selected an independent engineer to assess whether the Sanchezes' concrete patio extension was negatively affecting drainage of the Youngs' property and whether their home's foundation had been damaged, and, if so, the estimated cost of any necessary repairs; in addition, the parties both agreed to install gutters on their property bordering the easement and to provide a key to any gate on the easement. Paragraph 3 of the Settlement Agreement requires the parties to comply with the engineer's recommendations within 45 days of the engineer's report. The engineer's September 26, 2005 report found that drainage improvements on the Sanchezes' concrete patio were needed, and included an estimate

of $3,393 for the proposed drainage improvements by Lovell Construction Co. When the Sanchezes commenced work on the drainage project, the Youngs objected that the report did not address all the issues stated in the Settlement Agreement. In August 2006, the engineer conducted a second evaluation at the Youngs' request and prepared a second report in which he found that the minor foundation movement on the Youngs' property was caused by shifting of the clay soil, and could not be attributed to the neighboring patio slab.

Two years passed with no resolution of the dispute. On September 15, 2008, the Sanchezes filed a "Third Amended Answer and Counterclaims" in which they asserted a new counterclaim for breach of contract alleging the Youngs had breached the Settlement Agreement by failing to install gutters on their property as required by Paragraph 5, and by interfering with the Sanchezes' ability to comply with the agreement by completing the drainage improvements. The Sanchezes asserted that they installed gutters on their home in November 2005, within 45 days of the engineer's report in accordance with the Settlement Agreement, but that the Youngs had not installed gutters on their property as required by the agreement. The Sanchezes sought actual damages for the increased cost of completing the drainage project plus attorney's fees. The Youngs did not file any pleading in response to the counterclaim.

In 2009, the Sanchezes proceeded with completion of the drainage work on their property. Lovell Construction's cost to complete the project had increased by $907 from the original estimate. The drainage improvements on the Sanchez property were inspected by the engineer and found to be satisfactory on April 7, 2009.

On August 4, 2010, the Sanchezes moved for a no-evidence summary judgment on the Youngs' suit and for a traditional summary judgment on their counterclaim for the Youngs' breach of the Settlement Agreement and their request for attorney's fees. The Youngs did not

respond. On August 27, 2010, the trial court granted summary judgment in favor of the Sanchezes, ordering that the Youngs take nothing by their suit and awarding the Sanchezes $907 in breach of contract damages and $9,201.57 in attorney's fees, plus court costs. The court further ordered the Youngs to install gutters on their home along the zero lot line wall by October 31, 2010.[1] The Youngs now appeal.

ANALYSIS

On appeal, the Youngs assert the trial court's summary judgment must be reversed because: (1) there was a prior court ruling referring the matter back to mediation; (2) jurisdiction over the matter was vested in the mediator, not the trial court; (3) the Sanchezes' summary judgment motion was barred by laches; (4) the Sanchezes failed to prove compliance with a condition precedent of the Settlement Agreement which required additional mediation; and (5) alternatively, the award of attorney's fees is excessive as a matter of law.

### *Jurisdiction and Mediation*

In their first and second issues, the Youngs assert the trial court had no jurisdiction to grant summary judgment because any dispute was required to go back to mediation under Paragraph 2 of the Settlement Agreement, and the case had in fact been referred back to mediation by the trial court on April 13, 2006. The Youngs contend the Settlement Agreement and an April 13, 2006 court ruling "vested jurisdiction with the mediator not the trial court." Although they assert that "the primary basis for this appeal is the lack of jurisdiction," and "this case presents a clear cut issue of law," the Youngs cite no legal authority in support of their argument. *See* TEX. R. APP. P. 38.1(i). Because subject matter jurisdiction cannot be waived, however, we will briefly address the issue of jurisdiction raised by the Youngs. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993) (subject matter jurisdiction is

---

[1] The Sanchezes' brief notes the Youngs installed the gutters in November 2010.

never presumed and cannot be waived); *see also Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (whether a trial court has jurisdiction is a question of law subject to de novo review).

As noted, supra, Paragraph 2 of the Settlement Agreement recited the parties' agreement to "try to resolve" any dispute arising out of the agreement by phone conference with the mediator. On April 6, 2006, the Sanchezes filed a "Motion to Enforce" the Settlement Agreement, asserting the Youngs had blocked their completion of the drainage repairs within the 45-day time frame of the agreement. In their briefs, the parties agree that a hearing was held on the motion to enforce on April 13, 2006, and that the trial court ruled that the issue should be referred back to the mediator.[2] The Youngs argue that because the Sanchezes did not challenge the April 13, 2006 ruling referring the dispute back to mediation, and the parties never returned to mediation, the referral precluded the subsequent granting of summary judgment in favor of the Sanchezes in 2010; as noted, supra, the Youngs cite no legal authority in support of this argument.

Even if there were an order referring the case back to mediation in the record before us, it would not affect the trial court's jurisdiction over this case. "Subject matter jurisdiction exists when the nature of the case falls within a general category of cases the court is empowered, under applicable statutory and constitutional provisions, to adjudicate." *In re Barnes*, 127 S.W.3d 843, 846 (Tex. App.—San Antonio 2003, orig. proceeding) (quoting *McGuire v. McGuire*, 18 S.W.3d 801, 804 (Tex. App.—El Paso 2000, no pet.)). Texas district courts are courts of general jurisdiction and are presumed to have subject matter jurisdiction over all

---

[2] The appellate record does not contain a transcript of the hearing or oral ruling on April 13, 2006, and no written order referring the case back to mediation appears in the record. The only thing in the record to reflect the trial court's ruling is a handwritten notation with the judge's initials on the cover of the case file stating, "4-13-06 … referring back to mediator." The docket sheet, however, contains no entry for an order referring the matter back to mediation or for any other ruling on the motion to enforce.

matters unless the Texas Constitution or another statute confers exclusive jurisdiction elsewhere. *See* TEX. CONST., art. V, § 8; TEX. GOV'T CODE ANN. § 24.007 (West 2004); *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004). Jurisdiction is vested in a court, not in a particular individual. *See Stine v. State*, 935 S.W.2d 443, 444 (Tex. App.—Waco 1996, pet. ref'd) ("Jurisdiction is the authority conferred upon a court by the constitution and laws of the state which allows a court to adjudicate litigants' rights and render a judgment.").

Section 154.021(a) of the Civil Practice and Remedies Code authorizes a trial court to refer a pending dispute for resolution by an alternative dispute resolution procedure such as mediation. TEX. CIV. PRAC. & REM. CODE ANN. §§ 154.021(a), 154.023 (West 2011). When a matter is referred to mediation, the trial court does not lose jurisdiction over the case as a mediator does not have the power to render judgment; only the trial court has the authority to render a final judgment. *Id.* § 154.023(b) (mediator may not impose own judgment on the issues); *id.* § 154.071(b) (West 2011) (providing that the trial court may, in its discretion, incorporate the terms of a settlement agreement into the court's final decree disposing of the case). The trial court retains jurisdiction over the case until a final judgment is rendered disposing of all parties and issues. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). After entry of a final judgment, the trial court does not lose jurisdiction over the case until its plenary power expires. *See* TEX. R. CIV. P. 329b.

A mediated settlement agreement is enforceable in the same manner as any other contract. TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a) (West 2011); *Hardman v. Dault*, 2 S.W.3d 378, 380 (Tex. App.—San Antonio 1999, no pet.). Here, the Sanchezes requested affirmative relief from the trial court based on the Settlement Agreement through their summary judgment motion seeking enforcement of the Settlement Agreement and damages for its breach.

*Stevens v. Snyder*, 874 S.W.2d 241, 243 (Tex. App.—Dallas 1994, writ denied) (once parties have accepted settlement agreement, enforcement is by suit upon the contract, either for breach or specific performance). The Youngs, on the other hand, did not file any response to the Sanchezes' summary judgment motion, did not answer or plead any defense to the Sanchezes' counterclaim for breach of the Settlement Agreement, and did not themselves plead for any affirmative relief based on the Settlement Agreement. *See Pickell v. Guaranty Nat'l Life Ins. Co.*, 917 S.W.2d 439, 441-42 (Tex. App.—Houston [14th Dist.] 1996, no writ) (court cannot take action on mediated settlement agreement without an affirmative request to do so through pleadings); *see also Martin v. Black*, 909 S.W.2d 192, 195 (Tex. App.—Houston [14th Dist.] 1995, writ denied). The trial court had jurisdiction to rule on the Sanchezes' summary judgment motion and to render a final judgment in this case. The Youngs' jurisdictional challenges are without merit, and are overruled.

### *Laches*

Next, the Youngs assert the summary judgment on the Sanchezes' breach of contract claim was barred by laches because the Sanchezes did not challenge the April 6, 2006 referral back to mediation and delayed in filing their summary judgment motion. Laches is an affirmative defense that must be pled and proved by the party asserting the defense. TEX. R. CIV. P. 94; *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 852 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). An affirmative defense that is not specifically pled is waived. TEX. R. CIV. P. 94; *Kinnear v. Tex. Comm'n on Human Rights ex rel. Hale*, 14 S.W.3d 299, 300 (Tex. 2000). The Youngs did not assert laches in any pleading in the trial court—they did not file an answer to the Sanchezes' counterclaim for breach of contract or a response to the Sanchezes' summary judgment motion. There is nothing in the record to show

the Youngs ever raised the issue of laches in the trial court or presented any evidence to prove laches; further, there is nothing to indicate it was tried by consent. Therefore, the defense of laches was waived. *See Cont'l Homes of Tex., L.P. v. City of San Antonio*, 275 S.W.3d 9, 15-16 (Tex. App.—San Antonio 2008, pet. denied).

### *Condition Precedent*

The Youngs also assert the Sanchezes were not entitled to summary judgment on their breach of contract claim because they failed to show their compliance with a condition precedent to enforcement of the Mediated Settlement Agreement, i.e., to return to the mediator to resolve any disputes. In their Third Amended Answer and Counterclaims, the Sanchezes pled that they had attempted to resolve the on-going issues by returning to the mediator. Specifically, the Sanchezes pled that they had "talked with Judge Schuble and these issues cannot be resolved by phone conference. Therefore, Counter-Plaintiff brings the issue to this Court for determination." In addition, the Sanchezes pled that they had "acted in good faith in order to comply with the Agreement" by paying their half of the engineer's fee, installing gutters on the zero lot line side of their home, and engaging the services of Lovell Construction to make the drainage improvements to the patio area, which project was then postponed by the Youngs' objection.

Once a party has generally alleged that all conditions precedent have been performed, the burden shifts to the other party to specifically deny the conditions precedent that have not occurred. *See* TEX. R. CIV. P. 54; *Greathouse v. Charter Nat'l Bank-Southwest*, 851 S.W.2d 173, 174, 177 (Tex. 1992); *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (plaintiff's allegation under Rule 54 that all conditions precedent have occurred shifts the burden of pleading, not proof, to defendant to specifically deny those conditions precedent that have not occurred). The burden then shifts back to the plaintiff to prove

performance of the particular conditions precedent that were specifically denied. *Betty Leavell Realty Co. v. Raggio*, 669 S.W.2d 102, 104 (Tex. 1984); *Phifer v. Nacogdoches Cnty. Cent. Appraisal Dist.*, 45 S.W.3d 159, 174 (Tex. App.—Tyler 2000, pet. denied). However, if the defendant does not identify a specific condition that has not been complied with, it admits that all conditions precedent have occurred. *Greathouse*, 851 S.W.2d at 177; *Cmty. Bank & Trust, S.S.B. v. Fleck*, 107 S.W.3d 541, 542 (Tex. 2002) (absent a specific denial, plaintiff is relieved of burden of proving that conditions precedent to recovery have been met). Here, the Sanchezes alleged their compliance with the requirements of the Settlement Agreement, including making an attempt to use the mediator to resolve issues related to the Settlement Agreement. The Youngs did not file any responsive pleading specifically denying the occurrence of a condition precedent; therefore, they are deemed to have admitted compliance with all conditions precedent. *Greathouse*, 851 S.W.2d at 177; *Fleck*, 107 S.W.3d at 542. Accordingly, we overrule this issue.

### *Attorney's Fees*

Finally, the Youngs challenge the award of $9,201.57 in attorney's fees, claiming it is excessive as a matter of law because it bears no relationship to the $907 awarded in damages. They suggest a remittitur of $7,000 to reduce the fee award to a reasonable amount of $2,201.57.

A party may recover reasonable attorney's fees under section 38.001 of the Civil Practice and Remedies Code if the party (1) prevails on a breach of contract claim and (2) recovers damages. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008); *MBM Fin. Corp. v. Woodlands Operating Co. L.P.*, 292 S.W.3d 660, 666 (Tex. 2009). The party need only recover some amount in damages on its breach of contract claim. *MBM Fin.*, 292 S.W.3d at 666. The amount of attorney's fees awarded is only required to bear some reasonable relationship to the amount recovered. *Chilton Ins. Co. v. Pate & Pate Enterprises, Inc.*, 930 S.W.2d 877, 896 (Tex.

App.—San Antonio 1996, writ denied); *Cordova v. Sw. Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 448 (Tex. App.—El Paso 2004, no pet.). Further, the amount of damages awarded is only one of several factors used in determining the reasonableness of an attorney fee award.[3] *Cordova*, 148 S.W.3d at 448; *Hicks Oil & Butane Co. v. Garza*, No. 04-05-00836-CV, 2006 WL 2263896, at *4 (Tex. App.—San Antonio Aug. 9, 2006, no pet.) (mem. op.).

The fee award here is not excessive in view of the summary judgment record and the five-year period during which the dispute continued after execution of the Settlement Agreement. The dollar amount of fees awarded is supported by the uncontroverted affidavits of attorneys Amy M. McLin and Robert E. Hughes, Jr. detailing the hourly rate each charged and the legal work each performed on behalf of the Sanchezes in relation to enforcement of the Settlement Agreement and their breach of contract claim. McLin states she worked 55.1 hours after execution of the Settlement Agreement through the summary judgment at an hourly rate of $150 per hour for a total of $7,195.71 in attorney's fees and incurred $130.86 in expenses; her affidavit is supported by a detailed billing statement covering the five-year period from August 15, 2005 through August 27, 2010.[4] Hughes, the prior lead counsel for the Sanchezes, states he worked 12.5 hours at an hourly rate of $150 for a total of $1,875.00 in attorney's fees; his billing statement covers the period from February 23, 2005 through June 29, 2006.[5] Both attorneys' affidavits describe their legal experience and familiarity with customary rates for similar legal

---

[3] The factors frequently considered in determining the reasonableness of an attorney fee award are: (1) the time and labor required, the novelty and difficulty of the question presented, and the skill required; (2) the likelihood that acceptance of employment precluded other employment; (3) the fee customarily charged for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the expertise, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997).

[4] McLin's billing statement is Exhibit 33 to the Sanchez summary judgment motion.

[5] Hughes' billing statement is Exhibit 34 to the Sanchez summary judgment motion.

services, and opine their legal services were reasonable and necessary on behalf of the Sanchezes. The Youngs did not object to the Sanchezes' summary judgment proof of attorney's fees in the trial court and do not challenge the sufficiency of the evidence on appeal, only the disproportionality of the attorney's fees with respect to the damages.

A disproportionate relationship between the amount of damages and attorney's fees awarded does not alone render the attorney fee award excessive, and the Youngs cite no other factor to show the fee award was unreasonable. *See, e.g.*, *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 354-55 (5th Cir. 2001) (applying Texas law and affirming award of $712,000 in attorney's fees on a recovery of $74,570 in actual damages under Insurance Code); *Herring v. Heron Lakes Estates Owners Ass'n, Inc.*, No. 14-09-00772-CV, 2011 WL 2739517, at *5 (Tex. App.—Houston [14th Dist.] Jan. 4, 2011, no pet.) (mem. op.) (upholding attorney's fees of $71,804 on a breach of contract damages award of $700 in unpaid homeowner's maintenance assessments); *Padgett's Used Cars & Leasing, Inc. v. Preston*, No. 04-04-00579-CV, 2005 WL 2290249, at *5 (Tex. App.—San Antonio Sept. 21, 2005, no pet.) (mem. op.) (holding attorney's fee award that was approximately six times the actual damages awarded was not excessive in light of entire record). Here, the summary judgment record shows the case was prolonged for five years after the Settlement Agreement, due in large part to the Youngs' objections and conduct that delayed and prevented the Sanchezes' ability to fully comply with the Settlement Agreement. We hold the attorney's fees are not excessive in light of the prolonged nature of the litigation, and are supported by the record. Accordingly, we overrule the Youngs' challenge to the attorney's fee award.

*Conclusion*

Based on the foregoing analysis, all of the Youngs' issues are overruled, and the trial court's judgment is affirmed.

Phylis J. Speedlin, Justice