ACCEPTED
15-25-00054-cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/6/2026 4:25 PM
CHRISTOPHER A. PRINE
CLERK

ORAL ARGUMENT CONDITIONALLY REQUESTED

No. 15-25-00054-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/6/2026 4:25:38 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS FOR THE FIFTEENTH DISTRICT
## AUSTIN, TEXAS

**JOHANNES B. MASSAR,**
*Appellant*

v.

**PEGASUS PAIN MANAGEMENT, PLLC,**
*Appellee*

**From Cause No. CC-22-00078-B in the County Court at Law No. 2, Dallas County, Texas, Honorable Melissa Bellan, Presiding**

## APPELLEE PEGASUS PAIN MANAGEMENT, PLLC'S MOTION TO STRIKE REPLY BRIEF OR ALTERNATIVELY MOTION FOR LEAVE TO FILE SUR-REPLY

Mark A. Ticer
State Bar No. 20018900
mticer@ticerlaw.com
Jennifer W. Johnson
State Bar No. 24060029
jjohnson@ticerlaw.com
**LAW OFFICE OF MARK A. TICER**
10440 N. Central Expressway, Suite 600
Dallas, Texas 75231
214-219-4220 – Telephone
214-219-4218 – Facsimile

**ATTORNEYS FOR APPELLEE**

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................. i

INDEX OF AUTHORITIES........................................................................................ ii

I. INTRODUCTION ................................................................................................ 1

II. MASSAR'S *REPLY BRIEF* SHOULD BE STRICKEN ................................... 2

  A. Massar's *Reply Brief* Concerning Conditions Precedent Comes Too Late ..... 2

  B. Massar's *Reply Brief* Does Not Provide a Cure for Other Inadequate Briefing5

III. ALTERNATIVELY, PEGASUS SHOULD BE PERMITTED A SUR-REPLY TO RESPOND TO MASSAR'S NEW ARGUMENT............................................. 7

  A. Massar's Trial By Consent Fails ......................................................... 8

  B. Massar's Other New Arguments Equally Fail................................................. 14

CONCLUSION .................................................................................................... 16

CERTIFICATE OF SERVICE ............................................................................. 17

CERTIFICATE OF CONFERENCE..................................................................... 17

CERTIFICATE OF COMPLIANCE...................................................................... 18

# INDEX OF AUTHORITIES

**Cases**

*Bankhead v. Maddox*,
  135 S.W.3d 162 (Tex. App. – Tyler 2004, no pet.)...................................... 2, 3, 5

*Bennett v. Cochran*,
  96 S.W.3d 227 (Tex. 2002) ........................................................................15

*Betty Leavell Rlty. Co. v. Raggio*,
  669 S.W.2d 102 (Tex. 1984) .........................................................................4

*Brown v. Green*,
  302 S.W.3d 1 (Tex. App. – Houston [14th Dist.] 2009, no pet.) ...........................2

*Case Corp. v. Hi-Class Business Systems of America, Inc.*,
  184 S.W.3d 760 (Tex. App. – Dallas 2005, pet. denied) ......................................8

*City of Keller v. Wilson*,
  168 S.W.3d 802 (Tex. 2005) ..........................................................................3

*Dallas County v. Gonzalez*,
  183 S.W.3d 94 (Tex. App. – Dallas 2006, pet. denied) ......................................2

*Fort Worth Transp. Auth. v. Rodriguez*,
  547 S.W.3d 830 (Tex. 2018) ........................................................................14

*Greathouse v. Charter Nat'l Bank-Sw*,
  851 S.W.2d 173 (Tex. 1992) ..........................................................................4

*In re KFC U.S.A., Inc.*,
  No. 05-98-01116-CV, 1998 WL 427284 (Tex. App. – Dallas Jul. 30, 1999, orig.
  proceeding) ...............................................................................................7

*Richey v. Brouse*,
  No. 03-23-00544-CV, 2024 WL 5241049 (Tex. App. – Austin Dec. 20, 2024,
  pet. filed) (mem. op.)........................................................................... 2, 3, 5, 6

*Trimcos, LLC v. Compass Bank*,
  649 S.W.3d 907 (Tex. App. – Houston [1st Dist.] 2022, pet. denied)....................5

*Valadez v. Avitia*,
  238 S.W.3d 843 (Tex. App. – El Paso 2007, no pet.) ............................................5

## Rules

*Tex. R. App. P.* 34.6(c)(4) ......................................................................15

*Tex. R. App. P.* 38.3.........................................................................2, 3

Pegasus Pain Management, PLLC ("Pegasus"), Appellee herein, files *Appellee Pegasus Pain Management, PLLC's Motion to Strike Reply Brief or Alternatively Motion for Leave to File Sur-Reply* and would show the Honorable Court as follows:

## I.
## INTRODUCTION

Pegasus timely filed *Appellee's Brief* on December 1, 2025. As part of *Appellee's Brief*, Pegasus argued that Appellant Johannes Massar ("Massar") has waived his appeal to the judgment obtained by Pegasus due to inadequate briefing. For example, Massar did not address the standard of review for his challenge to the breach of contract claim in the judgment – that is whether Massar is making a legal or factual sufficiency of evidence challenge and what that standard requires.

Compounding the absence of any standard of review in his opening brief, Massar has failed to explain how the evidence falls within any standard of review including any analysis for satisfying any standard. At best, Massar's briefing is conclusionary and suffers from a systematic absence of analysis.

Massar has obviously recognized his inadequate briefing and lack of analysis when he filed his reply brief. Massar is using his reply brief in an attempt to avoid waiver by inadequate briefing by identifying several standards of review for the first time and offering new arguments and analysis. Massar's reply brief confirms that his opening brief was deficient.

Because Massar's opening briefing is legally deficient and cannot be cured by his reply brief in identifying standards of review and new arguments and analysis, Massar's *Reply Brief of Appellant ("Reply Brief")* should be stricken or alternatively Pegasus should be permitted to file a sur-reply.

## II.
## MASSAR'S *REPLY BRIEF* SHOULD BE STRICKEN

An appellant may not use a reply brief to make new arguments and/or interject new matters not raised in the opening brief. *Tex. R. App. P.* 38.3; *Brown v. Green*, 302 S.W.3d 1, 15 n. 17 (Tex. App. – Houston [14th Dist.] 2009, no pet.); *Dallas County v. Gonzalez*, 183 S.W.3d 94, 104 (Tex. App. – Dallas 2006, pet. denied). Thus, a reply brief may not be used to cure or address deficiencies in an opening brief. *Richey v. Brouse*, No. 03-23-00544-CV, 2024 WL 5241049, at *4 (Tex. App. – Austin Dec. 20, 2024, pet. filed) (mem. op.); *Bankhead v. Maddox*, 135 S.W.3d 162, 163-65 (Tex. App. – Tyler 2004, no pet.).

### A. Massar's *Reply Brief* Concerning Conditions Precedent Comes Too Late

For the first time in his *Reply Brief*, Massar contends the evidence is "legally insufficient" to support Pegasus' recovery for breach of contract. *Reply Brief*, p. 4. Not only did Massar fail to identify this standard of review and make this argument

in his opening brief[1], but he does not provide any of the four grounds[2] for legally insufficient evidence as well as how these grounds may apply to his new argument.

By not identifying any standard of review regarding his conditions precedent defense – specifically legal insufficiency – and providing no actual analysis, Massar has waived the issue through inadequate briefing. Permitting Massar to raise legal insufficiency in a reply brief for the first time not only violates *Tex. R. App. P.* 38.3 and well-settled authority regarding this issue, but prevents Pegasus from responding to this new issue and argument. *Richey*, 2024 WL 5241049, at *4 (failure to attack the legal sufficiency of the evidence in opening brief waived issue); *Bankhead*, 135 S.W.3d at 164-65 (appellant may not use a reply brief to salvage issues waived in opening brief).

Additionally, Massar completely disregarded Rule 54 in the trial court, precluding consideration of Massar's conditions precedent defense. In his *Reply Brief*, Massar contends, again for the first time, that the conditions precedent issue was tried by consent. This new argument was not preserved in the trial court, was not made in the opening brief, and cannot be offered for the first time in his *Reply*

---

[1] Massar did not identify any standard of review for his challenge to breach of contract and provided no analysis based on "legally insufficient" evidence.

[2] Legal insufficiency occurs when: (1) there is a complete absence of evidence of a vital fact; (2) a court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

*Brief.*

Massar's failure to deny Pegasus' compliance with any conditions precedent means Pegasus was not required to establish that it satisfied any conditions precedent. *Greathouse v. Charter Nat'l Bank-Sw*, 851 S.W.2d 173, 174 (Tex. 1992); *Betty Leavell Rlty. Co. v. Raggio*, 669 S.W.2d 102, 104 (Tex. 1984). Massar's failure to comply with Rule 54 and/or plead conditions precedent as an affirmative defense means all conditions precedent have occurred.

But even assuming Massar could challenge conditions precedent, he failed to adequately brief the issue in his opening brief. When preparing his opening brief, Massar was obviously aware that he had not satisfied Rule 54 and/or pled any affirmative defense relating to conditions precedent. Thus, the only available argument to Massar was trial of the issue by consent[3]; nevertheless, Massar ignored this argument altogether and only raised it for the first time in a reply, which comes too late.

To reiterate, a reply brief may not be used to compensate for inadequate briefing. Massar's opening brief does not raise, much less identify, any factual or legal insufficiency challenge; Massar's brief, as Pegasus has demonstrated, does not

---

[3] Massar may not credibly claim that trial by consent is only being raised in response to Pegasus' brief when Massar was obviously aware of his own waivers when he filed his opening brief and his only available argument was trial by consent. Moreover, given Massar's overwhelming inadequate briefing in his opening brief, it is no surprise that Massar waived any trial by consent argument.

identify or analyze any standard of review, provide any analysis of any standard of review, and/or explain why any standard of review entitles Massar to reversal. *See Trimcos, LLC v. Compass Bank*, 649 S.W.3d 907, 921 (Tex. App. – Houston [1st Dist.] 2022, pet. denied); *Valadez v. Avitia*, 238 S.W.3d 843, 843 (Tex. App. – El Paso 2007, no pet.). Likewise, Massar's opening brief did not address any trial by consent.

Massar may not use a reply brief to cure his inadequate briefing in his opening brief. *Richey*, 2024 WL 5241049, at \*4 (failure to identify and analyze the factual insufficiency in a judgment in the initial brief cannot be cured in a reply brief); *Bankhead*, 135 S.W.3d at 164-65. Yet this is precisely what Massar tries to do in his *Reply Brief*, which this Court should not allow.

### B. Massar's *Reply Brief* Does Not Provide a Cure for Other Inadequate Briefing

Massar's other arguments/issues were inadequately briefed and his *Reply Brief* likewise may not be used to overcome these deficiencies. In his *Reply Brief*, Massar provides new arguments and spends several pages arguing why the disciplinary rules apply and act as an excuse for not paying Pegasus. Massar's new arguments in his reply come directly in response to Pegasus demonstrating Massar's inadequate briefing and are again too late. Massar's *Reply Brief* cannot be used to salvage arguments and missing analysis that should have been a part of Massar's opening brief.

Massar's *Reply Brief* also presents new argument regarding his interpleader excuse. In his opening brief, Massar spends barely two paragraphs regarding his entitlement to discharge because of interpleader. *Brief of Appellant*, pp. 30-31. Massar did not provide any meaningful analysis – simply conclusions. Massar may not use his *Reply Brief* to compensate for waiver regarding his interpleader claim in his initial brief.

Massar's reply also for the first time mentions standards of review and analysis regarding promissory estoppel waived in his opening brief. In Massar's opening brief, Massar devotes several short conclusory paragraphs to promissory estoppel. In Massar's reply, he argues, again for the first time, that there is insufficient evidence to support Pegasus' alternate ground for recovery.[4] *Reply Brief*, p. 13. Massar's reply presents new and untimely arguments and analysis for evidence regarding promissory estoppel. *Richey*, 2024 WL 5241049, at *4 (reply brief may not be used to attack the sufficiency of the evidence for the first time).

Massar's *Reply Brief* also belatedly refers to the sufficiency of evidence for the award of $15,990 in damages. In Massar's initial brief, he devotes two conclusionary paragraphs to claiming the award of damages is incorrect with no mention of insufficiency, much less analysis related thereto. This latest argument in

---

[4] Massar does not refer to insufficiency of evidence regarding any issue in his opening brief, only in his reply and only after Pegasus pointed out this deficiency.

his *Reply Brief* comes too late.

Lastly, Massar's *Reply Brief* attempts to interject a jurisdictional issue regarding the $8,000 purportedly paid into the court's registry. While jurisdictional issues may be raised at any time, Massar's reply does not identify, analyze, or much less explain any jurisdictional issue including the $8,000 in the court's registry. Massar's reply cannot be use to create a phantom jurisdictional issue which Massar has not adequately briefed.[5]

Massar's *Reply Brief* may not be used to cure the numerous and overwhelming deficiencies in Massar's opening brief. Accordingly, Massar's *Reply Brief* should be stricken.

## III.
## ALTERNATIVELY, PEGASUS SHOULD BE PERMITTED A SUR-REPLY TO RESPOND TO MASSAR'S NEW ARGUMENT

Should this Court permit Massar's *Reply Brief*, Pegasus should be afforded an opportunity to address Massar's new arguments in his *Reply Brief*. Although the Texas Rules of Appellate Procedure do not provide for a sur-reply, if the *Reply Brief* is permitted, Pegasus should be permitted a sur-reply. A court may grant leave to file a sur-reply for good cause or in the interests of justice. *See In re KFC U.S.A., Inc.*, No. 05-98-01116-CV, 1998 WL 427284, at *1 (Tex. App. – Dallas Jul. 30,

---

[5] If a jurisdictional issue existed, Massar should have filed a motion to dismiss or a motion to abate the appeal. By proceeding to briefing, Massar is acknowledging that there is no jurisdictional issue.

1999, orig. proceeding).

## A. Massar's Trial By Consent Fails

Initially, Pegasus would show Massar's argument that the issue of conditions precedent was tried by consent fails for several reasons. In determining whether there is trial by consent, the trial court examines the record "not for evidence of the issue, but rather for evidence of the trial of the issue." *Case Corp. v. Hi-Class Business Systems of America, Inc.*, 184 S.W.3d 760, 771 (Tex. App. – Dallas 2005, pet. denied). Trial by consent does not apply when evidence relevant to an unpled matter is also relevant to a pleaded issue. *Id.* Trial by consent is the exception rather than the rule and reserved for exceptional cases. *Id.* at 772.

Massar's *Reply Brief* does not articulate the rules for trial by consent; Massar merely contends a reviewing court must examine the record for evidence of trial of the issue and offers several excerpts from the trial. However, Massar does not establish that the excerpts provided in his reply demonstrate trial of Massar's conditions precedent defense.

In particular, the excerpts provided by Massar go to the issue of Massar's use of Pegasus' medical records and billings to obtain two settlements on behalf of Ronald Paulson (Massar's client), Pegasus' fraud claim, and Massar's breach of contract – in other words, the excerpts go to evidence of pled issues – not exclusively unpled issues. Moreover, Massar admitted that he had Paulson's treatment notes, x-

ray reports, narrative reports, and itemized statements from Pegasus which Massar argued were the conditions precedent in Massar's Letter of Protection. Indeed, Massar testified that:

> Q. Yeah, you would need to have that before you wrote any demand letter, you want to have the medical records and medical charges, right?
>
> A. I happened to look at my demand letter on this case, and we did a very thorough demand on this, when specifics what each doctor indicated his diagnostics and treatments, and what the nature of his injuries were to determine so we can max out on the policies.
>
> Q. You included the Pegasus bills and Pegasus records in the demand, didn't you?
>
> A. Yes.
>
> Q. You didn't tell the insurance company those bills weren't reasonable, they weren't necessary, you didn't tell them that, did you?
>
> A. No. That's foolish if I did that, but I will tell you that the insurance company came back and said that there's questionable billings and questionable diagnostics on the injections.

RR Vol. 2, pp. 116-117.

. . .

> Q. Did you -- but you used the Pegasus bills and records to establish and get a settlement, did you not?
>
> A. To the current damages, right.
>
> Q. Well, you used the records, too, to show what kind of treatment he had, what kind of injuries he had. My gosh, the man was in a 10 out of 10 pain. You used those records, didn't you?
>
> A. Of course.

APPELLEE PEGASUS PAIN MANAGEMENT, PLLC'S MOTION TO STRIKE REPLY BRIEF OR ALTERNATIVELY MOTION FOR LEAVE TO FILE SUR-REPLY

PAGE 9

RR Vol. 2, p. 118.

. . .

Q. Did you at any time tell Pegasus or call Pegasus and say -- before December 2, 2020, and say your bills are not reasonable, your treatment was the wrong treatment, anything along that line?

A. No. I didn't have any problems until Mr. Paulson informed me.

Q. You were happy to use those bills, and you were happy to use those records from Pegasus, weren't you?

A. Yes.

Q. And when you used those medical bills, Pegasus bills and Pegasus records, you were representing to the insurance company in the demand letter, on behalf of your client, Mr. Paulson, those bills were reasonable and necessary, weren't you? Not just Pegasus's, but every bill that you included were reasonable and necessary?

A. Generally speaking, yes. (Inaudible) medical reports, the medical -- that the doctor provided to my client is proper.

RR Vol. 2, pp. 118-119.

. . .

Q. So at the time of settlement and you visit with Mr. Paulson about the bills and what you're going to demand, that you knew from Pegasus that he – the records reflected he received trigger point injections and epidurals, you knew that, right?

A. At what time?

Q. When you made the demand letter to the – the first settlement?

A. Yes.

Q. You knew all that because you reviewed it?

A. That's correct.

Q. And you went over that with Mr. Paulson, didn't you, you said, well, here's what we got from Pegasus. The bill is X, and it says you received trigger point and epidurals?

A. Typically, I do that all the time. I don't -- I know I spent a lot of time with Mr. Paulson, yes.

Q. Okay. And did you -- and what was his response when you went over these treatment records with him and the bills before you ever sent a demand letter out, what did he tell you?

A. I think I -- we reviewed the medical records with him, and he said okay. So I said let's just get this thing done.

Q. So at the time before you ever -- assuming you met with him, you went over these records, and you went over the bills with him, all the bills, but that would have included Pegasus, right?

A. Right.

Q. And you talked to him about the treatment records, right?

A. Right.

Q. Okay. And at the time you met with him before that, nothing was said was I never got this treatment, none of that. You never heard a word about that, did you?

A. Not before the demands, no.

RR Vol. 2, pp. 119-121.

. . .

Q. Okay. And you've just told me that you sent out these letters, this demand letter with Pegasus bills and records, and by doing that, you were representing to the insurance company those bills were reasonable and necessary, were you not?

A. Yes.

RR Vol. 2, p. 123.

Pegasus also elicited testimony from Massar demonstrating fraud and Massar's lack of credibility in trying to excuse his failure to pay Pegasus:

Q. It says this letter is contingent -- or the LOP is contingent on receiving certain items. Do you see those?

A. Correct.

Q. You received every one of those items from Pegasus, did you not?

A. Some documents we didn't get until after we were in litigation from your office.

Q. What documents did you not get?

A. A lot of those financial records, whether he was -- had the -- informing him that they were not taking the billing insurance. I'm sure there's some other records that I did not get.

Q. I'm confused. What is -- this list, four categories of items. Daily treatment notes, you got those, didn't you?

A. Right.

Q. Okay. You got the x-ray reports, if x-rays were taken. You got those, didn't you?

A. Yes.

Q. Okay. You got initial, interim and final narrative reports, didn't you? The treatment notes?

A. I got the final narrative report. I guess I was including any financial information that Pegasus was obtaining from my client.

Q. Okay. Let me keep going here. Four says itemized statement services

rendered. Do you see that?

A. Yes.

Q. Where in any of this does it say I want the financial records or your financial policy that you weren't processing insurance and things of nature, where is that in this?

A. It's not.

RR Vol. 2, pp. 124-125.

The excerpts found in Massar's *Reply Brief* do not establish proof of trial by consent for Massar's unpled defense of failure of conditions precedent. Therefore, there is no trial by consent regarding Massar's unpled conditions precedent defense.

But even assuming Massar's conditions precedent defense was tried by consent, the trial court clearly and overwhelmingly rejected Massar's contentions. As Pegasus' brief reveals, Massar suffered from significant credibility challenges, systematically avoiding answering straightforward questions and testified expressly and materially contrary to his contentions; furthermore, the evidence overwhelmingly demonstrates that all conditions precedent were met for the items identified in Massar's Letter of Protection, including that Pegasus' charges were reasonable and necessary.

Even Paulson, Massar's client, did not support Massar's version of events concerning any conditions precedent. Notably, Paulson testified that he instructed Massar to pay Pegasus but Massar refused to follow his client's instructions.

Massar's conditions precedent argument fails on the merits.

**B. Massar's Other New Arguments Equally Fail**

Massar's new argument and analysis regarding the Texas Disciplinary Rules and any insufficiency of the evidence equally fails. Massar may not blame the Disciplinary Rules for not paying Pegasus because these rules are not civil standards for liability and Massar failed to follow the very rules he relies on. Indeed, Massar failed to inform Pegasus that he had settled the liability case, chose to pay certain providers to the exclusion of Pegasus, waited years to make any payments, asked for and received a reduction of the Pegasus bill when he knew (according to his own testimony) that a dispute allegedly existed over the Pegasus bill, used Pegasus' bills and records to obtain two settlements for Paulson, and failed to follow Paulson's instructions to pay Pegasus. Massar's reliance on the Disciplinary Rules not to pay Pegasus is meritless.

Massar's newest argument regarding interpleader does not change the outcome. Evidence presented at trial establishes there were no rival claims – Paulson told Massar to pay Pegasus. Moreover, Massar's inexcusable, unexplained, and dishonest delay[6] defeats interpleader. Lastly, Massar offers no record of the hearing on his interpleader request and thus, this Court must legally presume the trial court's

---

[6] Pegasus cites *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850-52 (Tex. 2018) for its delay argument. Massar provides no argument why *Rodriguez* should be ignored.

ruling is correct. *Tex. R. App. P.* 34.6(c)(4); *Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002). On the merits, Massar's latest argument regarding interpleader fails.

Massar's new arguments regarding promissory estoppel, like his other new arguments, fail. Massar for the first time raises factual insufficiency but Massar fails to identify what facts are insufficient for promissory estoppel. Although Massar lists three elements for promissory estoppel, he does not identify any element on which there is factual insufficiency – only conclusions. Indisputably, Massar made a promise to pay Pegasus $8,000 for its treatment of Paulson and Pegasus relied on this promise as evidenced by Pegasus' repeated attempts to contact Massar for payment. Massar's new promissory estoppel argument is without merit.

Massar's latest challenge regarding damages disregards Pegasus' legal authority on this issue. Massar's refusal to pay $8,000 promised to Pegasus entitles Pegasus to sue on the original debt and Massar does not contest this legal authority. Massar cannot rely on a promise he refused to fulfill to limit damages.

Finally, the omission of the $8,000 in interplead funds as a jurisdictional challenge is flawed. If the trial court's judgment is not final, then Massar should be requesting dismissal or abatement of the appeal, yet Massar's prayer in the *Reply Brief* seeks reversal and rendering judgment in his favor. This prayer is legally inconsistent with Massar's jurisdictional argument. There is no jurisdictional issue and Massar's argument on this subject is meritless.

In summary, even if this Court were to consider Massar's *Reply Brief*, there is no merit in the new arguments that Massar makes.

## CONCLUSION

Massar's *Reply Brief* should be struck as it represents an attempt to cure and salvage issues waived by Massar's inadequate briefing in his opening brief. If the Court does consider Massar's *Reply Brief*, then it should grant Pegasus leave to file and consider its Sur-Reply portion of this *Motion*.

WHEREFORE, PREMISES CONSIDERED, Appellee prays this Court affirm the Judgment and grant it such other and further relief to which it is entitled.

Respectfully submitted,

*/s/ Mark A. Ticer*
Mark A. Ticer
State Bar No. 20018900
mticer@ticerlaw.com
Jennifer W. Johnson
State Bar No. 24060029
jjohnson@ticerlaw.com

**LAW OFFICE OF MARK A. TICER**
10440 N. Central Expressway, Suite 600
Dallas, Texas 75231
214-219-4220 – Telephone
214-219-4218 – Facsimile

***ATTORNEYS FOR APPELLEE***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served upon all counsel of record as follows, *via electronic filing*, on this the 6th day of January 2026:

Raymond R. Fernandez, Jr.
State Bar No. 06934275
rfernandez@fernandezllp.com
Robert L. Knebel, Jr.
State Bar No. 11589500
rknebel@fernandezllp.com
**FERNANDEZ LLP**
2515 McKinney Avenue, Suite 920
Dallas, Texas 75201
214-231-2700 – Telephone

*/s/Mark A. Ticer*
Mark A. Ticer

## CERTIFICATE OF CONFERENCE

Appellee Pegasus Pain Management, PLLC conferred with Appellant Johannes Massar regarding the relief sought herein via email on January 6, 2026. Appellant is opposed to Appellee's *Motion*.

*/s/Mark A. Ticer*
Mark A. Ticer

# CERTIFICATE OF COMPLIANCE

*Appellee Pegasus Pain Management, PLLC's Motion to Strike Reply Brief or Alternatively Motion for Leave to File Sur-Reply* complies with the typeface and length requirements of Texas Rule of Appellate Procedure 9.4 because:

(1) This brief complies with typeface and the type style requirements of Rule 9.4(e) because the brief has been prepared in a conventional typeface using Word with Times New Roman 14-point font.

(2) This brief complies with the length requirements of Rule 9.4(i)(2) because it contains 3,596 words, excluding the parts of the brief exempted by Rule 9.4(i)(1).

*/s/Mark A. Ticer*
Mark A. Ticer

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Amerson on behalf of Mark Ticer
Bar No. 20018900
lamerson@ticerlaw.com
Envelope ID: 109724790
Filing Code Description: Motion
Filing Description: Appellee's Motion to Strike Reply Brief or Alternatively, Motion for Leave to File Sur-Reply
Status as of 1/6/2026 4:34 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Raymond R.Fernandez | | rfernandez@fernandezllp.com | 1/6/2026 4:25:30 PM | SENT |
| Robert L.Knebel | | rknebel@fernandezllp.com | 1/6/2026 4:25:30 PM | SENT |
| Mark Ticer | 20018900 | mticer@ticerlaw.com | 1/6/2026 4:25:30 PM | SENT |
| Michelle Smith | | msmith@ticerlaw.com | 1/6/2026 4:25:30 PM | SENT |
| Jennifer WeberJohnson | | jjohnson@ticerlaw.com | 1/6/2026 4:25:30 PM | SENT |
| Brooke Bailey | | bbailey@ticerlaw.com | 1/6/2026 4:25:30 PM | SENT |